IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ELIZABETH HERNANDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-CV-2016-L |
| | § | |
| HAMMOND POWER SOLUTIONS INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant's Motion for Summary Judgment ("Motion") (Doc. 27), filed December 20, 2024. After careful consideration of the Motions, briefs, appendix, record, and applicable law, the court **grants** Defendant's Motion for Summary Judgment (Doc. 27).

### I. Procedural and Factual Background

Plaintiff Elizabeth Hernandez ("Plaintiff" or "Ms. Hernandez") filed this action against Defendant Hammond Power Solutions, Inc. ("Hammond" or "Defendant") on September 7, 2023. On July 15, 2016, Plaintiff filed her First Amended Complaint ("Complaint") (Doc. 11), which is the live pleading. In her Complaint, Plaintiff contends that Hammond discriminated against her when it terminated her employment because of her disability, gender, age, and for reporting a coworker.

Ms. Hernandez asserts claims for disability discrimination in violation of the Americans with Disabilities Act ("ADA"); age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); and retaliation under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). She also alleges that Defendant made a fraudulent representation and a negligent misrepresentation. Plaintiff seeks compensatory damages for lost wages and lost

Memorandum Opinion and Order - Page 1

benefits. She also seeks actual damages, exemplary damages, liquidated damages, damages for mental anguish, and attorney's fees. On December 20, 2024, Hammond moved for summary judgment. Plaintiff filed a response to Defendant's Motion on January 21, 2025. On February 4, 2025, Defendant filed a reply in support of its Motion.

The court now sets forth the facts in accordance with the standard in Section II of this opinion. Ms. Hernandez began her employment with Hammond in June 2019 as the United States OEM Sales Manager operating out of Dallas, Texas. Doc. 1 at 3. Hammond is a manufacturer of "dry-type" transformers in North America used in oil and gas, mining, steel, commercial construction, data centers, wind power generation, and other industries. Doc. 27 at 2 (citation omitted). On or around January 1, 2021, Plaintiff accepted a promotion and was placed on a temporary one-year assignment as the National Sales Manager for Hammond's Mexico region. Pl.'s Comp. 3.

During her temporary assignment, she allegedly began experiencing harassment and discrimination. In October 2022, Ms. Hernandez sent e-mails to Catherine McKeown, the Chief People Officer for Hammond, addressing concerns that she had regarding Juan Pablo Urena, the Director of Sales for Mexico, in which she stated that Mr. Urena scolded her in front of her peers, undermined her strategies, and held meetings with her clients without her. Def.'s Summ. J. Mot. 5 (citing Def.'s App. 26, Hernandez Dep. 85:1-7)). Ms. McKeown informed Plaintiff that the allegations she made were serious and required documentation to support her assertions. *Id.* In response, Plaintiff submitted 12 case studies, which illustrated her experiences with Mr. Urena. *Id.* at 6. One month later, after discussing the information with Plaintiff, Ms. McKeown informed Plaintiff that there was no independent evidence of Mr. Urena's harassing or scolding behavior. *Id.* (citing Def.'s App. 100, McKeown Decl. ¶ 16; Def.'s App. 52, Hernandez Dep. at 141:15-25).

On November 2 and 7, 2022, while Plaintiff was employed by Hammond and during her one-year temporary assignment, she was evaluated by two independent doctors who informed Hammond that she needed to be treated for her disability. *Id.* at 6-7. As a result, Plaintiff requested reasonable accommodation for her disability, which was a three-month leave of absence. *Id.* On November 2, 2022, Hammond granted the request and allowed Plaintiff to take medical leave. *Id.* at 7 (citing Def.'s App. 37). On November 9, 2022, Ms. McKeown e-mailed Ms. Hernandez through her personal Gmail account requesting clarification regarding her two medical opinions. *Id.* (citing Catherine McKeown Declaration). Ms. Hernandez did not respond to Ms. McKeown's e-mails via her work or personal e-mails. *Id.* After a little over one month into her three-month leave, Defendant terminated Plaintiff's employment on December 8, 2022. *Id.*

Defendant moves for summary judgment on each of Plaintiff's claims. Defendant contends that there is no genuine dispute of material fact as to any of Plaintiff's claims, and that Plaintiff presents no evidence to prove or establish her *prima facie* cases of disability, age discrimination, or gender discrimination; and presents no evidence to support her retaliation, fraud, or negligent misrepresentation claims. Hammond further argues that Ms. Hernandez's employment was terminated for a legitimate, nondiscriminatory reason, and that Plaintiff presents no evidence that its stated reasons for termination of her employment constitute pretext for discrimination. Accordingly, Defendant contends that it is entitled to judgment as a matter of law on each of Plaintiff's claims.

Plaintiff counters that she has presented evidence to raise a genuine dispute of material fact with respect to each of her claims, which precludes Defendant from being entitled to judgment as a matter of law. She therefore requests the court to deny Hammond's Motion.

**Memorandum Opinion and Order - Page 3**

## II.   Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita*, 475 U.S. at 587.  (citation omitted).  Mere conclusory allegations are not

competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.    Discussion

#### A. Age Discrimination

Defendant contends that it is entitled to summary judgment on Plaintiff's ADEA claim. Defendant argues that Plaintiff's claim for age discrimination fails as a matter of law, as she cannot meet her burden of establishing a *prima facie* case. Def.'s Summ. J. Br. 8. Specifically, Hammond argues that Plaintiff presents no evidence that she was replaced by someone significantly or substantially younger, or that she was discharged because of her age. *Id.* Further, Hammond contends that it articulated a legitimate, nondiscriminatory reason for dismissing her from her

employment. *Id.* at 9. Hammond argues that Ms. Hernandez presents no evidence that its articulated reasons are a mere pretext for discrimination.

Plaintiff contends that she was born on August 1, 1970, and was replaced by Juan Pablo Urena, who was born on September 27, 1980. Pl.'s Summ. J. Resp. Br. 6. She argues that she because the record establishes that she was replaced by a younger person, she has established her *prima facie* case. *Id.*

### 1.    Legal Standard for an ADEA Claim

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Unlike Title VII, the ADEA does not authorize an alleged mixed-motives age discrimination claim. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009). Instead, a plaintiff bringing a disparate-treatment claim under the ADEA must prove or raise a genuine dispute of material fact that age was the "but-for" cause of the challenged adverse employment action. *Id.*; *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). It is therefore insufficient under the ADEA for a plaintiff to show that age was a motivating factor. *Gross*, 557 U.S. at 175. "But-for" cause means the cause without which the challenged adverse employment action or event would not have occurred. *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013) (citation omitted).

A plaintiff may prove employment discrimination with either direct or circumstantial evidence. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994)).  As there is no direct evidence that Hammond discriminated against Ms. Hernandez because of her age, Plaintiff must rely on circumstantial evidence to or raise a genuine dispute of material fact that Defendant intentionally discriminated against her because of her age.

The burden-shifting framework set forth in *McDonnell Douglas Corporation*, 411 U.S. at 802-04, applies to ADEA cases based on circumstantial evidence of discrimination. *Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). To establish a *prima facie* case of age discrimination, a plaintiff must show or raise a genuine dispute of material fact that: "(1) [s]he was discharged; (2) [s]he was qualified for the position; (3) [s]he was within the protected class at the time of discharge; and (4) [s]he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [her] age." *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).

Once a plaintiff establishes a *prima facie* case, the defendant must set forth a legitimate, nondiscriminatory reason for the employment action it took against the plaintiff. *Machinchick*, 398 F.3d at 350. This is a burden of production, not persuasion, on the defendant's part, and it "can involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). "If the [defendant] articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual." *Moss*, 610 F.3d at 922. "In determining whether the plaintiff's rebuttal precludes summary judgment, '[t]he question is whether [the plaintiff] has shown that there is a genuine dispute of material fact as to whether this reason was pretextual.'" *Id.* (citation omitted). Pretext may be shown "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson*, 602 F.3d at 378-79 (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (internal quotation marks omitted)).

2.      **Analysis**

a.      ***Prima Facie* Case**

For purpose of the *prima facie* case, Defendant argues that Plaintiff fails to prove, or establish a genuine dispute of material fact, the last element of her *prima facie* case—whether she was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age. The court, therefore, focuses solely on whether Plaintiff has presented evidence to support the last element of her *prima facie* case.

Defendant argues that Plaintiff's claim is based on her subjective belief that her age was the reason for termination. Def.'s Summ. J. Br. 9. It contends that it is "illogical that Hammond would have hired Hernandez while she was already in the protected age category and continue to promote her throughout her employment, only to terminate her employment because of her age only a year later." *Id.*

Ms. Hernandez argues that the ages of her superiors are irrelevant to the *prima facie* analysis. Pl.'s Resp. 6. Plaintiff contends, and the evidence supports, that during her leave and after her termination, Juan Pablo Urena, who is younger than Plaintiff, took over her responsibilities. *Id.* (citing App. 004, Urena Dep. at 32:23-24).  The court agrees.

Plaintiff and Defendant agree and provide evidence to establish that while Plaintiff was on leave, Mr. Urena took over her responsibilities at work. Despite Defendant's contention in its reply that distribution of responsibilities does not constitute replacement, it is clear that when Plaintiff was terminated, she was replaced by Rafael Carillo, who is also younger than she is. The court determines that Plaintiff has established a *prima facie* case of age discrimination.

### b.    Legitimate, Nondiscriminatory Reason

Hammond argues that Plaintiff's termination was the result of a legitimate, nondiscriminatory reason. Defendant contends that despite its continuous attempts to contact Ms. Hernandez, she stopped responding to Defendant's e-mails and telephone calls, even after being instructed to keep Defendant informed of her medical and naturalization status. Def.'s Summ. J. Br. 9. Further, Hammond argues that Plaintiff did not provide it with updated medical documentation, and the documentation it did have was conflicting and unclear. *Id.* at 10. Defendant contends that, after not being able to communicate with Ms. Hernandez for over a month, it was presumed that she abandoned her job, and as a result, it made the decision to terminate her employment.

In response, Ms. Hernandez contends that Defendant's explanation is unworthy of credence because she was unable to access her work e-mail account, and Defendant had no confirmation that its requests were received by Plaintiff. Pl.'s Resp. 9. Further, she argues that while she may have failed to respond, Hammond's actions ensured that she had no way to receive or respond to the communications. *Id.*

Defendant produces evidence that establishes that it had a nondiscriminatory and legitimate reason for terminating Ms. Hernandez's employment. Prior to taking leave, Defendant informed Plaintiff that she was required to become a Mexican national to properly serve Defendant's Mexican market. Def.'s App. 99. The evidence presented by Defendant establishes that this information was provided to Plaintiff prior to her taking leave. Further, the e-mails presented by Defendant demonstrate several attempts to contact Plaintiff before terminating her. Defendant made it clear in the e-mails sent to her that her accommodation request was unclear, but she did not respond. Therefore, the court determines that Defendant has satisfied its burden of production

by identifying legitimate, nondiscriminatory reasons for its termination decision. *See Goudeau v. National Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015).

### c.    Pretextual and Unworthy of Credence

Proceeding to the final stage in the *McDonnell Douglas* analysis, Ms. Hernandez must provide sufficient evidence from which a jury could reasonably infer that Hammond's reasons are merely pretextual, or that even if the reasons are true, her age was the but-for cause of her termination. *See Miller v. Raytheon Co.,* 716 F.3d 138, 144 (5th Cir. 2013). "At the end of the day, the pretext inquiry asks whether there is sufficient evidence demonstrating the falsity of the employer's explanation, taken together with the prima facie case, to allow the jury to find that discrimination was the but-for cause of the termination." *Goudeau*, 793 F.3d at 478.

As previously stated, Plaintiff contends that Defendant's reason for her termination is pretextual and unworthy of credence because she was unable to access her e-mails because Defendant restricted her access. Pl.'s Resp. 9.

That Defendant e-mailed Plaintiff on her work e-mail after allegedly having restricted her access to it is not alone sufficient to meet the burden of showing that Defendant's reasoning was pretextual or unworthy of credence. Instead, what is at issue is whether Hammond's reason, "even if incorrect, was the real reason" for Ms. Hernandez's termination. *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 899 (5th Cir. 2002). Further, Plaintiff admits during her deposition that Ms. McKeown sent her an e-mail to her personal Gmail, noting that there is a difference in opinion between the two medical professionals, and she requested that Plaintiff keep her informed of her prognosis. Def.'s App. 39-40.  According to Ms. McKeown, Defendant attempted to contact Plaintiff through multiple methods, including calls, WhatsApp, and emails to her personal email. Pl.'s App. 029, McKeown Dep. at 93:9-13. While Ms. Hernandez disputes that Defendant

attempted to reach out to her on several occasions, she recalled Defendant's employee David Macias calling her once through her personal cellphone. Def.'s App. 43, Hernandez Dep. at 130:7-11. Even if the court were to accept Plaintiff's argument, which it does, that she did not have access to her work e-mail, that alone is insufficient to establish that Defendant's legitimate, nondiscriminatory reason is unworthy of credence or pretextual. This is so because the record clearly establishes that Mrs. McKeown sent an e-mail to Plaintiff's personal email and also contacted Ms. Hernandez on her cell phone, but she never responded to Mrs. McKeown inquiries. Plaintiff does not refute or contradict this evidence. Further, Plaintiff provides no evidence to establish that her age was the but-for cause of her termination. Failure to respond to an employer's inquiries regarding work-related matters is a valid reason to discharge a nonresponsive employee.

In sum, viewing all evidence in the light most favorable to Ms. Hernandez as the nonmovant, the court concludes that she has failed to raise a genuine dispute of material fact that Hammond's nondiscriminatory reason for firing her was a pretext for age discrimination, and that "but for" her age, she would not have been terminated. Accordingly, there is no genuine dispute of material fact as to Plaintiff's ADEA claim, and Defendant is entitled to judgment as a matter of law on this claim.

### B.    Gender Discrimination

Plaintiff contends that she was replaced by two males, Juan Pablo Urena and Rafael Carillo, to assume her duties and fill her role. Pl.'s Resp. 7. She argues that she "detailed repeated complaints made by her to Hammond personnel that Juan Pablo Urena was 'very [belittling] towards her, very discriminatory, disrespectful, disengaged, isolated [her].'" *Id.* (citing App. 14-15, Hernandez Dep. at 136:24 – 137:1)). Further, Ms. Hernandez contends that she "stated that [Juan Pablo Urena] threatened her on multiple occasions and explained that his behavior was

discriminatory because '[I]n Mexico, a man doesn't threaten another man unless you're going to hurt him, so I don't think he would have talked to another man the way he would speak to me.'" *Id.* (citing App. 15, Hernandez Dep. at 137:6-10). As a result, she contends that she has established her *prima facie* case.

### 1.    Legal Standard for a Gender Discrimination Claim

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To survive a motion for summary judgment, a Title VII plaintiff must first establish a *prima facie* case of discrimination by a preponderance of the evidence or at least raise a genuine dispute of material fact. *See McDonnell Douglas Corp.,* 411 U.S. at 802-04; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Once this *prima facie* case has been established, there is a presumption of discrimination, and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802-04. If such a showing is made, the burden shifts back to the plaintiff to create a genuine dispute that the articulated "reason is not true, but instead a pretext for discrimination," or that the defendant's "reason, while true, is only one of the reasons for its conduct, and that another 'motivating factor' is [the Plaintiff's] protected characteristic." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citation omitted).

After a Title VII case reaches the pretext stage, the question for summary judgment is whether a rational factfinder could find that the employer intentionally discriminated against the plaintiff on the basis of gender. *See St. Mary's Honor Ctr.*, 509 U.S. at 511. A "plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). "Pretext-plus" is not required

to support an inference of retaliatory discrimination. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and may, therefore, be enough to prevent summary judgment or judgment as a matter of law. *Reeves*, 530 U.S. at 148; *Sandstad*, 309 F.3d at 897. This showing, however, is not always enough to prevent summary judgment "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148.

### 2. Analysis

#### a. *Prima Facie* Case

To make out a *prima facie* case of sex discrimination under Title VII, Ms. Hernandez must show that she: (1) is a member of a protected class, (2) was qualified for the position, (3) was subject to an adverse employment action, and (4) was replaced by someone outside the protected class, or in the case of disparate treatment, shows that others similarly situated were treated more favorably. *Saketkoo v. Administrators of Tulane Educ. Fund,* 31 F.4th 990, 998 (5th Cir. 2022).

Regarding Plaintiff's *prima facie* case, Defendant argues that she fails to prove, or establish a genuine dispute of material fact, the last element of her *prima facie* case—whether she was either (i) replaced by someone outside the protected class, (ii) replaced by a male, or (iii) treated less favorably than a similarly situated male. Therefore, the court focuses solely on whether Plaintiff has presented evidence to support the last element of her *prima facie* case.

Defendant argues that Ms. Hernandez's "contention stems from Urena allegedly stating 'well, you're getting those type[s] of sales because you're a woman.'" Def.'s Summ. J. Br. 13 (citing App. 51, Hernandez Dep. at 140:1-4)). It contends that this one statement alone is insufficient to establish a gender discrimination claim. Second, Hammond contends that Plaintiff was not replaced by a male because Mr. Urena only assumed Plaintiff's job duties after she went on leave. *Id.*

Ms. Hernandez contends that Mr. Urena assumed the duties of her position, and Rafael Carillo was hired to fill her role after she was terminated. Pl.'s Resp. 7. Further, she argues in her deposition, that she detailed the complaints she made to Hammond regarding comments that Mr. Urena made to her. *Id.* (citing App. 14-15, Hernandez Dep. at 136:24 – 137:1). Last, Plaintiff contends that she and Mr. Urena were in similarly situated positions because they shared the same responsibilities, had their employment status determined by the same person, and did not have previous disciplinary history. *Id.* As a result, she argues that she has established a *prima facie* case for gender discrimination.

As stated previously, during her leave, Mr. Urena assumed Ms. Hernandez's responsibilities and was eventually replaced by Mr. Carillo, both of whom are males. Viewing the evidence in the light most favorable to Plaintiff, the court determines that she has established a *prima facie* case for gender discrimination.

### b.  Legitimate, Nondiscriminatory Reason

Defendant contends that Ms. Hernandez was terminated for a legitimate, nondiscriminatory reason. Def.'s Summ. J. Br. 14. As mentioned previously, it argues that Ms. Hernandez's employment was terminated after she stopped communicating with Defendant for over a month and after that she failed to become nationalized as a Mexican National. *Id.*

**Memorandum Opinion and Order - Page 14**

Plaintiff's response regarding Defendant's legitimate, nondiscriminatory reason is the same for each argument, and the court need not repeat it here because such has been stated in an earlier section. As stated previously, the court determines that Defendant has satisfied its burden of production by identifying legitimate, nondiscriminatory reasons for Ms. Hernandez's termination decision.

### c. Pretextual and Unworthy of Credence

For the reasons stated regarding Plaintiff's age discrimination claim and viewing all evidence in the light most favorable to Ms. Hernandez as the nonmovant, the court concludes that she has failed to raise a genuine dispute of material fact that Hammond's nondiscriminatory reason for firing her was a pretext for gender discrimination, and that her gender or sex was not a motivating factor with respect to her termination. Her arguments and statements regarding gender discrimination are based on sheer speculation and conjecture, which are insufficient to raise a genuine dispute of material fact. Accordingly, there is no genuine dispute of material fact as to Plaintiff's Title VII gender discrimination claim, and Defendant is entitled to judgment as a matter of law on this claim.

### C.    Disability Discrimination

With respect to Plaintiff's disability discrimination claim brought pursuant to the ADA, Defendant contends that Plaintiff has no evidence that she was subjected to an adverse employment action on the basis of her disability. Def.'s Summ. J. Br. 16. Hammond further argues that Ms. Hernandez was dismissed for a legitimate, nondiscriminatory reason unrelated to her disability. *Id.* It contends that it provided Plaintiff an accommodation based on the medical documentation she provided. *Id.* at 17.

Plaintiff acknowledges that she "requested and received medical leave as an accommodation for her disability—anxiety—and the limitations resulting therefrom." Pl.'s Summ. J. Resp. Br. 8. Ms. Hernandez argues that she was qualified for the job and performed it for an extended period of time, but because she was on leave, she was suspended from accessing her work e-mail and was fired for failing to respond to the e-mails. *Id.* Further, she contends that she was fired for failing to respond to e-mails despite not being able to access them. *Id.* Therefore, Plaintiff argues that she has established her *prima facie* case. *Id.*

### 1.    Legal Standard for an ADA Claim

The ADA is an antidiscrimination statute designed to remove barriers that prevent qualified individuals with disabilities from enjoying employment opportunities available to persons without disabilities. *Taylor v. Principal Fin. Grp., Inc.,* 93 F.3d 155, 161 (5th Cir. 1996). The ADA prohibits discrimination against a qualified individual because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training; and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

A person "may establish a claim of discrimination under the ADA either by presenting direct evidence or by using the indirect method of proof set forth in *McDonnell Douglas* . . . ." *Seaman v. CSPH, Inc.,* 179 F.3d 297, 300 (5th Cir. 1999). Because there is no direct evidence that Plaintiff was discriminated against because of her disability, she must "show a violation of the ADA using circumstantial evidence [and] must satisfy the *McDonnell Douglas* burden-shifting framework." *Cannon v. Jacobs Field Servs. N. Am., Inc.,* 813 F.3d 586, 590 (5th Cir. 2016).

### 2.    Analysis

To establish a *prima facie* case of intentional discrimination under *McDonnell Douglas,* Ms. Hernandez must show that she "(1) suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action, and (4) was replaced by a non-disabled person or treated less favorably than non-disabled employees." *Seaman v. CSPH, Inc.,* 179 F.3d 297, 300 (5th Cir. 1999). Hammond must then "show a legitimate, nondiscriminatory reason for its action." *Id.* "The employee ultimately bears the burden of showing that the employer's actions were motivated by considerations prohibited by the statute." *Id*.

A person is disabled under the ADA if she (1) has a physical or mental impairment that substantially limits one or more of the major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). The ADA Amendments Act of 2008 made it "easier for people with disabilities to obtain protection under the ADA." *Cannon*, 813 F.3d at 590 (citing 29 C.F.R. § 1630.1(c)(4)).  The amendments broadened the definition of "disability" by "construing the substantially limits standard in favor of broad coverage."  *Id* (internal quotation omitted). The bottom line in a "post-amendment case is thus whether [plaintiff's] impairment substantially limits her ability 'to perform a major life activity as compared to most people in the general population." *Id*. (citing 29 C.F.R. § 1630.2(j)(1)(ii)). Ms. Hernandez contends that her disability is anxiety and the limitations resulting therefrom.

Defendant argues that she fails to prove, or establish a genuine dispute of material fact, the last element of her *prima facie* case, whether she was replaced by a non-disabled person or treated less favorably than non-disabled employees. Therefore, the court focuses solely on whether Plaintiff has presented evidence to support the last element of her *prima facie* case.

**Memorandum Opinion and Order - Page 17**

Defendant argues that Ms. Hernandez has no evidence that she was subject to an adverse employment action because of her disability. Def.'s Summ. J. Br. 16. In response, Ms. Hernandez acknowledges that she requested and received medical leave as an accommodation for her anxiety. Pl.'s Summ. J. Resp. Br. 8. Ms. Hernandez argues that she was qualified for the job and performed it for an extended period of time, but she was suspended from accessing her work e-mail because she was on medical leave and was fired for failing to respond to the e-mails. *Id.* In its reply, Hammond contends that Ms. Hernandez provides no evidence or case law to support her contention that not accessing a work e-mail is sufficient to establish disability discrimination. Doc. 40 at 5. The court agrees. Further, as stated earlier, Ms. Hernandez had been contacted on her cell phone and personal email, but she did not respond to her employer's inquiries.

The court determines that Plaintiff has failed to establish a *prima facie* case of disability discrimination. Plaintiff does not produce evidence that she was replaced by a nondisabled person or treated less favorably than nondisabled employees. Ms. Hernandez only states that she was qualified for the job and was suspended due to the length of time she was on leave. Plaintiff does not establish or raise a genuine dispute of material fact that she was replaced by someone who did not have a disability or was treated less favorably than someone who did not have a disability. The conclusory statements that Ms. Hernandez provides regarding her e-mail and medical leave are insufficient to meet her burden. As the record establishes and the court has already acknowledged, Ms. Hernandez was replaced temporarily by Mr. Urena and eventually by Mr. Carillo. What the record does not establish, and Plaintiff has failed to address is whether either of these two men were not disabled or whether she was replaced by someone else who was not disabled.

For these reasons, Plaintiff fails to present evidence to establish a *prima facie* case of disability discrimination. Accordingly, there is no genuine dispute of material fact as to Plaintiff's ADA claim, and Defendant is entitled to judgment as a matter of law on this claim.

**D.      Retaliation Claims in violation of Title VII**

Defendant contends that for the reasons articulated above, Plaintiff's retaliation claim cannot survive summary judgment. Def.'s Summ. J. Br. 18. Hammond argues that Ms. Hernandez cannot establish a *prima facie* case of retaliation. *Id.* at 19. It further argues that Ms. Hernandez was dismissed for a legitimate, nonretaliatory reason. *Id.*

Plaintiff contends that she engaged in a protected activity and a causal connection exists between the protected activity and the adverse employment action. Pl.'s Resp. 8. Ms. Hernandez argues that she participated in a protected activity when she requested medical leave because of her anxiety. *Id.* Further, she contends that Defendant admits that once Plaintiff was granted leave, all investigations into her complaints regarding Juan Pablo Urena ceased, which demonstrates a causal connection. *Id.* at 8-9. As a result, Plaintiff argues that she established a *prima facie* case of retaliation.

In its reply, Hammond argues that the Plaintiff did not establish that she engaged in a protected activity. Doc. 40 at 6. It contends that Ms. Hernandez argues she engaged in a protected activity when she reported Mr. Urena and when she requested an accommodation under the ADA. *Id.* Further, Hammond argues that she cannot establish a causal connection because she is attempting to connect the date she requested leave and the date she was terminated solely based on the timing, coupled with the investigation into Mr. Urena. *Id.*

### 1.    Legal Standard for Retaliation

It is "an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice" under Title VII, or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001). Whether the employee opposes an unlawful practice or participates in a proceeding against the employer's activity, the employee must hold a reasonable belief that the conduct he opposed violated Title VII. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996).

To establish a *prima facie* case of retaliation in this circuit, a plaintiff must show that she: (1) engaged in a protected activity; (2) experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (footnote and citation omitted); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001)*; Mota v. University of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001). The establishment of a *prima facie* case gives rise to an inference of retaliation. *Montemayor,* 276 F.3d at 692. This inference, in turn, shifts the burden of production to the defendant, who must then articulate a legitimate, nondiscriminatory, or nonretaliatory reason for the challenged employment action. *McCoy*, 492 F.3d at 557. Once a defendant articulates such a reason, the inference of discrimination or retaliation raised by the *prima facie* showing drops from the case. *Montemayor,* 276 F.3d at 692.

At this juncture, the plaintiff bears the burden of establishing or raising a genuine dispute of material fact that the employer's stated reason is a pretext for the real retaliatory purpose.

*McCoy*, 492 F.3d at 557 (citation omitted).  "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  If the employee fails to prove, or raise a genuine dispute of material fact, that the employer's real reason is a pretext for its allegedly retaliatory conduct, the defendant is entitled to summary judgment.  *See  McCoy*, 492 F.3d at 561-62.

In *Burlington Northern & Santa Fe Ry. Co. v. White*, the Supreme Court held that, because the discrimination and retaliation provisions of Title VII have different statutory language and different purposes, "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."  548 U.S. 53, 64 (2006).  Consistent with this view, the Court held that a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory action "materially adverse" in that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quotation marks and citation omitted).  In evaluating whether actions are materially adverse, the Court went on to hold that "petty slights, minor annoyances, and simple lack of good manners will not" deter or dissuade a reasonable employee from making or supporting a charge of discrimination, and therefore they do not constitute conduct that is "materially adverse." *Id.* at 68.

### 2.   Analysis

Defendant contends that Plaintiff presents no evidence that she engaged in any protected activity under Title VII or that there was a causal connection between her reporting Mr. Urena and an adverse employment action. Def.'s Summ. J. Br. 19. First, Defendant contends that Plaintiff

sent Ms. McKeown an e-mail alleging that Mr. Urena harassed, scolded, and threatened her. *Id.* (citing App. 32, Hernandez Dep. at 100:12-20). Defendant contends that after Ms. McKeown requested more information, Plaintiff sent her 12 case studies that "amounted to ordinary work complaints between an employee and supervisor." *Id.* Further, it argues that the case studies did not allege that she was being discriminated against. *Id.* at 20. As a result, Hammond argues that Plaintiff cannot establish that she engaged in protected activity.

Plaintiff argues that making an accommodation request for a disability can constitute a protected activity. Pl.'s Resp. 8 (citing *Garner v. Chevron Phillips Chemical Co., L.P.*, 834 F. Supp. 2d 528, 541 (S.D. Tex. 2011)). Plaintiff contends that she engaged in protected activity when she requested leave for her anxiety, and there was a causal connection because she was fired only one month into her three-month leave. *Id.* at 8-9 (citation omitted).

Plaintiff has satisfied the elements to establish a *prima facie* retaliation case. First, by requesting an accommodation to manage her anxiety, Plaintiff was engaging in a protected activity. *See Way v. City of Missouri City*, 133 F.4th 509, 522 (5th Cir. 2025) (finding that the plaintiff was engaging in a protected activity when she requested accommodations for anxiety and uterine fibroids). Second, it is undisputed that Plaintiff's employment was terminated. This is sufficient evidence in the record to establish an adverse action.

Conversely, the third prong, which requires a causal link between the protected activity and the adverse action, is less clear. Plaintiff does not precisely establish how her request for an accommodation and her termination were connected, rather she merely mentions the close proximity in time between the two events. Ms. Hernandez attempts to bolster the causal connection with the fact that Hammond's investigation into Ms. Hernandez's reports of Mr. Urena's behavior had ceased once her medical leave began. Ms. Hernandez's reliance on the temporal proximity

between the two events is not fatal to the causal link element. *See Id.* at 522 (finding that temporal proximity alone may satisfy the causal link element if the timing is "very close"). According to Ms. Hernandez, she was evaluated by doctors who wrote notes about her need for a leave of absence in early November 2022, and Defendant terminated her in December 2022. Pl.'s Am. Comp. 6; Def.'s Summ. J. Br. 6 (stating Ms. Hernandez requested leave on November 2, 2022 and was terminated on December 8, 2022). This timing alone is sufficiently close to establish a causal connection. *See Way*, 133 F.4th at 522 (citing *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020)) (finding that a six-and-a-half-week time frame is sufficiently close to establish the element, but a five-month gap is not sufficiently close to do so, without further evidence of retaliation). Therefore Plaintiff satisfies the third prong.

For the reasons stated herein, the court determines that Ms. Hernandez has established, or raised a genuine dispute of material fact, that a causal connection exists between the protected activity and her termination.  The court must now determine whether Defendant articulated a legitimate, nondiscriminatory, or nonretaliatory reason for the challenged employment action, dropping the inference of discrimination or retaliation raised by the *prima facie* showing.

Defendant states that the reason for Ms. Hernandez's termination was her failure to respond to important communication from Defendant for over a month. Def.'s Summ. J. Br. 7. Additionally, Defendant states that it only paused its investigation into Ms. Hernandez's complaints, and it did so because she failed to provide additional documents supporting her claims. *Id.* Therefore, Defendant has provided a legitimate, nondiscriminatory, or nonretaliatory reason for Ms. Hernandez's termination.

Ms. Hernandez argues that Defendant's reason is pretextual as the "explanation is unworthy of credence due to [Defendant's] failure to include the important fact that the requests

were sent to [Ms.] Hernandez's work email account—an account that [Defendant] had restricted [Ms.] Hernandez's access to at the time of the request." Pl.'s Summ. J. Resp. Br. 9 (citing Pl.'s App. 028-029, McKeown Dep. at 92:15-93:7). Ms. Hernandez contends that the evidence shows that Defendant's own actions ensured that she would not see or respond to the communications. Defendant disputes this contention and states that it "made several attempts to communicate with [Ms.] Hernandez through her personal email account and her personal cell phone regarding the status of her nationalizing and providing additional medical documents on her return-to-work date." Def.'s Rep. 8 (citing Def.'s App. 40, Hernandez Dep. at 125:5-25; Def.'s App. 88, Hernandez Dep. at Exhibit 13; Def.'s App. 101, McKeown Decl. ¶ 21). While Ms. Hernandez disputes that Defendant's employees Ms. McKeown and David Macias attempt to contact her on several occasions, the evidence shows that Defendant's employees attempted to contact her through methods other than her work email more than once. When reading just past the lines of the deposition cited by Ms. Hernandez, according to Ms. McKeown, Defendant attempted to contact her through multiple methods, including calls, WhatsApp, and emails to her personal email. Pl.'s App. 029, McKeown Dep. at 93:9-13. While Ms. Hernandez disputes that Defendant attempted to reach out to her on several occasions, she recalled Mr. Macias calling her once through her personal cellphone. Def.'s App. 43, Hernandez Dep. at 130:7-11.

For the reasons stated herein, the court determines that Ms. Hernandez fails to prove, or raise a genuine dispute of material fact, that Defendant's real reason is a pretext for its allegedly retaliatory conduct. Accordingly, Hammond is entitled to judgment as a matter of law on this claim.

### E.    Fraud

Defendant contends that Plaintiff cannot establish the elements of her fraud claim because the basis of her claim relies on an alleged verbal promise made by Dale Sidey, the North American Director of Sales, that Plaintiff could maintain her position and live where she wanted after she was in her role for one year. Def.'s Summ. J. Br. 22. Hammond contends that a future promise is only actionable fraud when the promise is made with the purpose of deceiving and no intent to perform the promise. *Id.* Further, Defendant argues that during Ms. Hernandez's deposition, she admitted that the offer letter that she signed and read did not contain a provision stating that she could live anywhere. *Id.* Thus, Defendant contends that there is no evidence to support Plaintiff's fraud claim.

Plaintiff contends that she has provided evidence sufficient to establish:

(1) Hammond falsely represented that the position offered to Hernandez was temporary (2) with the knowledge that the position was never meant to be temporary (3) intending on Hernandez to act based on that representation, and (4) that false representation caused Hernandez injury in the form of mental anguish and monetary damages.

Pl.'s Resp. 10 (citation omitted).

### 1.    Legal Standard for Fraud

In Texas, the elements of common-law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citation omitted).

### 2.    Analysis

As stated previously, Defendant contends that a promise to do something in the future is only actionable fraud when it is made with the purpose of deceiving and no intent to perform the act. Def.'s Summ. J. Br. 22. Further, Hammond argues that failure to perform alone is not evidence that the promisor did not intend to perform at the time the promise was made. *Id.* Defendant argues that Plaintiff admitted that the offer letter that she signed and read did not contain a provision stating that she could live anywhere. *Id.* Accordingly, Defendant argues that it is entitled to summary judgment on this claim.

In response, Plaintiff contends that Defendant represented to her that the position she was offered was temporary and she would be able to return to a permanent job at the end of her temporary assignment. Pl.'s Resp. 10. Plaintiff argues that this representation was made verbally by Mr. Sidey and the offer letter she was given by Defendant. *Id.* (citing App. 012, Hernandez Dep. at 36:2-5; App. 013 Hernandez Dep. at 41:17-20; App. 35-38, Offer Letter). Further, she argues that Defendant knew that this representation was false and that Defendant always intended for Plaintiff to be based in Monterrey, Mexico. *Id.*

As Defendant correctly argues, a promise of future performance is only actionable fraud if the promise was made with no intention of performing at the time the promise was made. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex. 1998). Plaintiff does not provide evidence that Defendant had no intention of offering her a permanent job after she completed her temporary assignment. Plaintiff's argument is illogical as she is suggesting that Hammond is required and bound to keep her on for one year without regard for her job performance. Plaintiff's contention that Hammond *must* employ her during the temporary one-year assignment and place her at another job after the temporary assignment, regardless of whether

**Memorandum Opinion and Order - Page 26**

she is communicating effectively, performing on her job, or meeting the job requirements, is nonsensical. Accordingly, there is no genuine dispute of material fact as to Plaintiff's fraud claim, and Defendant is entitled to judgment as a matter of law on this claim.

### F.     Negligent Misrepresentation

Hammond contends that, similar to Plaintiff's fraud claim, there is no evidence that it made a false representation of facts on which Plaintiff relied. Def.'s Summ. J. Br. 24. Defendant argues that the offer letter that Ms. Hernandez signed did not state that she could live anywhere after her one-year assignment. *Id.* As a result, Hammond argues that it is entitled to judgment as a matter of law on this claim.

Ms. Hernandez contends that she has provided evidence sufficient to establish:

> (1) Hammond represented to Hernandez that the position in Mexico was temporary, (2) that representation conveyed false information for the guidance Hernandez in her business, (3) Hammond made the representation without exercising reasonable care, knowing that it was false and that the position was always meant to be permanent, and (4) Hernandez suffered pecuniary loss by justifiably relying on a written offer letter and the verbal representation of her supervisor.

Pl.'s Resp. 10-11 (citation omitted).

### 1. Legal Standard for Negligent Misrepresentation

To assert a claim for negligent misrepresentation, Plaintiff must allege that (1) Defendant made a misrepresentation in the course of its business, (2) Defendant supplied "false information" for guidance in its business, (3) Defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) Plaintiff suffered pecuniary loss by justifiably relying on Defendant's representations. *Gordon v. Bank of Am. Corp. & Green Tree Servicing, LLC*, No. 3:15-CV-902-L, 2015 WL 5872659, at *7 (N.D. Tex. Oct. 5, 2015) (citing *Williams v. Wells Fargo Bank, N.A.,* 560 F. App'x 233, 242 (5th Cir. 2014)).

### 2.  Analysis

Defendant argues that Plaintiff cannot prove the elements of her negligent misrepresentation claim. Def.'s Summ. J. Br. 24. It contends that, similar to Plaintiff's fraud claim, the offer letter that she read and signed did not state that she could live anywhere after her one-year assignment in Mexico. *Id.* Plaintiff's response regarding her fraud claim is the same, and the court need not repeat it as it has been stated in the earlier section.

For the reasons the court stated regarding Plaintiff's fraud claim, the court determines that there is no genuine dispute of material fact as to Plaintiff's negligent misrepresentation claim, and Defendant is entitled to judgment as a matter of law on this claim.

## IV.  Conclusion

For the reasons stated herein, the court **determines** that no genuine dispute of material fact exists with respect to Plaintiff's claims for ADA disability discrimination, ADEA age discrimination, Title VII sex/gender discrimination, Title VII retaliation, and the state law claims of fraud and negligent misrepresentation. Defendant is, therefore, entitled to judgment as a matter of law on these claims.  Accordingly, the court **grants** Defendant's Motion for Summary Judgment (Doc. 27); and **dismisses with prejudice** this action.  Judgment will issue by separate document as required by Federal Rule of Civil Procedure 58.

**It is so ordered** this 30th day of April, 2026.

Sam A. Lindsay
United States District Judge